STALKER *against* THE STATE OF CONNECTICUT:

### IN ERROR.

Where the public prosecutor, on an information for passing a counterfeit coin, purporting to be a half dollar, knowing it to be counterfeit, offered evidence of the prisoner's having in his possession, at the same time, an engraved paper having the appearance of a bank note, but not purporting to be signed or countersigned, for the purpose of shewing the guilty knowledge of the prisoner charged in the information ; it was held, that such evidence was inadmissible.

THIS was an information against *Joseph B. Stalker,* charging him with having passed a counterfeit coin, purporting to be a half dollar, knowing it to be counterfeit.

On the trial before the county court, it became material to prove, that the prisoner passed the pretended coin, *knowing* it to be counterfeit. For the purpose of proving such knowledge, the public prosecutor introduced a witness, to prove, that the prisoner, at the time of committing the offence charged,

had in his possession several other pieces of the same pretended coin. This testimony the counsel for the prisoner did not object to. The public prosecutor then offered to prove, in connexion with such testimony, as affording additional evidence of the prisoner's knowledge and of his fraudulent intent, that he had in his possession, at the same time, an engraved paper, having the appearance of a bank note, but without any signature of the president or cashier, or other person ; but the places where such signatures are on genuine bank notes, were left blank. Whether the paper had any date or sum expressed in it, or purported to be payable to any person or persons, or corporation, the witness could not state. The counsel for the prisoner objected to this testimony, insisting, that it could afford no just ground of inference against him, and that it ought not to be considered, by the jury, as legal evidence for the purpose for which it was offered. The court suffered it to go to the jury, with the direction to consider it as additional evidence of the prisoner's knowledge, as charged in the information.

The jury found the prisoner *guilty ;* and he filed a bill of exceptions, and brought a writ of error in the superior court, which was reserved for the advice of this court thereon.

*Kimberly* and *Seeley,* for the plaintiff in error, contended, 1. That the engraved paper in the possession of the prisoner was perfectly innocent. It was not a forged instrument ; forgery being the false making of an instrument, which purports on the face of it to be good and valid for the purposes for which it was created, with a design to defraud some person. 1 *Leach Cr. L.* 406. 2 *Leach Cr. L.* 910. 695. *Clinch's* case, 2 *Leach Cr. L.* 615. 2 *Russell* 1645 to 1652. To be punishable at common law, the cheat must be such that common prudence could not guard against it. 2 *Russell* 1379. 1446. 1452, 3. 2 *Sw. Dig.* 306.

The paper does not appear to have been *false.* So far as it had the appearance of a bank note, it was true and genuine ; and in all other respects, it was perfectly blank.

2. That the paper in question being innocent, and what it purported to be and nothing else, no inference of guilty knowledge could be legally made from it ; and it ought to have been excluded. 1 *Russell* 117. 2 *Stark Ev.* 378.

New-Haven,
July, 1832.

Stalker
v.
State.

*N. Smith* and *Mix*, for the defendant in error, after remarking, that the admission of testimony should not be too far restrained, the modern and better doctrine being, that objections should go to the credibility, and not to the competency of the witness, contended, That in a case of forgery or counterfeiting, evidence like that objected to, was admissible, to prove the *scienter* charged in the information. *Direct* evidence of a criminal's knowledge cannot ordinarily be had, and is not to be expected. Where the intention does not appear from the transaction itself, it must be proved from other facts and circumstances. 2 *Stark. Ev.* 378. *Rex* v. *Wylie* & al. 1 *New Rep.* 92. Here the prisoner could not have had this paper for any honest purpose. The possession of it is as strong evidence of an evil design, as if the names of the president and cashier had been counterfeited ; and the possession of counterfeited notes would as clearly evince such a design, as the possession of counterfeited coin ; which, *ex concessis*, may be proved to shew the knowledge charged. As to the evidence of knowledge resulting from collateral transactions, see *Gibson* v. *Hunter*, 2 *H. Bla.* 288.

PETERS, J. The only question presented by the record, is, whether the engraved print was admissible to prove, that the prisoner knew the half dollar he had passed, was counterfeit ? To the admission of the counterfeit half dollar he made no objection. In order to shew the guilty knowledge of the prisoner, evidence was admissible that he had uttered other base coin to other persons, on the same day or near the time. So the circumstance that the prisoner, at the time of uttering the half dollar, had other counterfeit coin,—especially, if it was of the same description with that uttered,—is also evidence to the same purpose. But to make such circumstances evidence, there must be a strong connexion in the subject matter ; as upon an indictment for forging and uttering a bill of exchange, it was holden that the prosecutor was not at liberty to prove that a bank note, which was found in the pocket of the prisoner, was forged. Per *Bayley*, J., *Lancaster Summ. Ass.* 1820, cited 3 *Stark. Ev.* 379. See *Rex* v. *Wylie* & al. 1 *New Rep.* 94. and authorities therein cited.

The question, then, comes to this : Was there such a connexion in the subject matter in the case before us ? One part of the subject matter of the case, was a counterfeit coin ; the

<div style="margin-left:margin">
New-Haven,
July, 1332.

Stalker
*v.*
State.
</div>

other, a paper engraving—and genuine, for aught that we know. Though an engraved print, in imitation of an unfinished bank note, in the hands of a man who has passed counterfeit coin, may excite a suspicion that it was not there for an honest purpose ; yet it has no more relation to the subject matter of the case, than a stolen horse found in the same situation.

A writ of error is *stricti juris ;* and if improper evidence has been admitted, we are bound to reverse the judgment, how trivial soever the error may be.

I advise the superior court, that there is manifest error in the judgment complained of.

The other Judges were of the same opinion.

<div align="right">Judgment reversed.</div>